# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0389V

|  |  |
|---|---|
| PAULA CAVALIER,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: July 25, 2023 |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Lauren Kells*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

  On January 8, 2021, Paula Cavalier filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on October 14, 2019. Petition at 1, ¶¶ 3, 9. On April 10, 2021, she filed an amended petition, alleging the same. Amended Petition at 1, ¶¶ 3, 17. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons described below, I find that Petitioner is entitled to compensation, and I award damages in the amount **$70,000.00**, **representing her actual pain and suffering.**

## I.   Relevant Procedural History

Approximately three months after the claim's initiation, Ms. Cavalier filed a declaration[3] and the medical records required by the Vaccine Act. Exhibits 1-8, filed Apr. 10, 2021, ECF No. 8; *see* Section 11(c). On June 9, 2021, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 11. Petitioner filed updated medical records on October 1, 2021. Exhibits 9-10, ECF No. 17.

On July 7, 2022, Respondent indicated he was willing to engage in settlement discussions. ECF No. 24. In response, Petitioner filed a motion requesting that I determine entitlement and compensation. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Brief"), filed Aug. 2, 2022, ECF No. 26. After I instructed the parties to make a minimal attempt to reach an informal settlement, they engaged in settlement discussions for approximately for two months – exchanging a demand from Petitioner and response from Respondent. *See,* e.g., Status Report, filed Sept. 28, 2022, ECF No. 29.

By October, however, the parties determined they had reached an impasse in their settlement discussions. Status Report, ECF No. 30. Accordingly, Respondent filed a brief in reaction to Petitioner's earlier-filed motion. Respondent's Response to Brief and Rule 4(c) Report ("Opp."), filed No. 18, 2022, ECF No. 31. Petitioner filed her reply on December 19, 2022. Petitioner's Reply in Support of Brief ("Reply"), ECF No. 32. The matter is now ripe for adjudication.

## II.   Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

---

[3] Petitioner's declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibit 2.

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

## B. Factual Finding Regarding QAI Criteria for Table SIRVA

### 1. Pain Onset

Respondent contests the second SIRVA Table claim criterion - whether onset of Petitioner's pain occurred within 48 hours of vaccination. Opp. at 9-11; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). Citing the almost three-month delay before Petitioner sought medical treatment (without any contemporaneous evidence explaining the delay)[5] and incorrect timing Petitioner advanced when attributing her pain to the flu vaccine she received (Opp. at 9), Respondent argues "the record does not support a finding, by preponderant evidence of the onset of an alleged shoulder injury within 48 hours of vaccination" (*id.* at 11).

---

[5] Respondent thus notes that Petitioner's reports of informally contacting her primary care provider ("PCP") prior to her first SIRVA-specific appointment (in January 2020) come from a March 12, 2020 physical therapy ("PT") session, generated after she began preparing her vaccine claim (although it was not formally initiated until the winter of 2021. Opp. at 9, 9-10 n.7 (citing Exhibit 1 at 4 (a March 10, 2020 records request referencing Petitioner's counsel) and Exhibit 4 at 18 (the PT record)). Additionally, Respondent insists that this delay in treatment is inconsistent with the severe initial symptoms Petitioner described in her declaration. Opp. at 9-10 (citing Exhibit 2 (Petitioner's declaration)).

Petitioner counters that "[t]here is nothing in the record that rebuts the ample evidence that the onset of Petitioner's symptoms was within 48 hours of the vaccination." Reply at 3. Maintaining that "medical records are independent evidence that substantiate the onset of her injury," she emphasizes her consistent reports of "pain that started after her flu shot." *Id.*

Delay in seeking treatment for a SIRVA injury is not by itself evidence that onset of pain had not occurred within the Table-defined timeframe. Indeed, as I have previously stated in numerous decisions and rulings, "it is often common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own." *Bergstrom v. Sec'y of Health & Hum. Servs.,* No. 19-0784V, 2020 WL 8373365, at *3 (Fed. Cl. Spec. Mstr. Dec. 4, 2020). Additionally, Petitioner was not seen during this three-month period for *any other* condition or illness. Such intervening evidence can collaborate or undermine a petitioner's claim, but it does not exist here.

Furthermore, there is reasonable record evidence of 48-hour onset. When Petitioner sought treatment for her right shoulder pain, she consistently reported an immediate onset. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

When first treated by her orthopedist on January 6, 2020, Petitioner indicated that she had been experiencing right arm/shoulder pain for two months "ever since she had her flu injection." Exhibit 3 at 11. However, this inexact description of her flu shot and pain onset as occurring two months earlier (as opposed to precise identification of onset) does not diminish the statement's impact. The descriptor she employed – *ever since*, clearly denotes an immediate pain onset. And Petitioner continued to describe pain which began with her vaccination at subsequent appointments. Exhibit 4 at 18, Exhibit 5 at 6; Exhibit 7 at 6; Exhibit 8 at 4, 6, 12, 14, 35. And there is a dearth of evidence supporting a later pain onset.

All of the above amounts to preponderant evidence establishing Petitioner likely suffered right shoulder pain immediately upon vaccination. The lack of a single contemporaneous item of evidence *specifically* identifying onset in 48 hours is simply not a basis for finding against Petitioner, since the other evidence taken together supports a favorable finding. Petitioner has thus satisfied the second criterion for a Table SIRVA injury.

5

### 2. Other QAI Criteria

Respondent does not dispute any other Table SIRVA requirements, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal a prior or current condition or abnormality which would explain Petitioner's condition or pain and limited range of motion ("ROM") other than in Petitioner's injured right shoulder. Thus, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

### III. Compensation to be Awarded

### A. Parties Arguments

In this case, Petitioner seeks only compensation for her past pain and suffering. Asserting that her SIRVA injury has lasted almost three years post-vaccination,[6] and is likely to continue into the future, she seeks $80,000.00. Brief at 26. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *T.E, Hartman, Decoretz, Bergstrom, Russano,* and *Accetta*[7] - decisions featuring awards ranging from $70,000.00 to $95,000.00. Brief at 19-22, 25-26.

---

[6] Petitioner made this assertion in her initial brief filed on August 2, 2022, approximately 34 months post-vaccination.

[7] *T.E. v. Sec'y of Health & Hum. Servs.,* No. 19-0633V, 2021 WL 2935751 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $70,000 for past pain and suffering); *Hartman v. Sec'y of Health & Hum. Servs.,* No. 19-1106V, 2022 WL 444456 (Fed. Cl. Spec. Mstr. Jan. 14, 2022) (awarding $75,000 for past pain and suffering); *Decoretz v. Sec'y of Health & Hum. Servs.,* No. 19-0391V, 2021 WL 2346468 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $75,000 for past pain and suffering); *Bergstrom v. Sec'y of Health & Hum. Servs.,* No. 19-0784V, 2021 WL 5754968 (Fed. Cl. Spec. Mstr. Nov. 2, 2021) (awarding $80,000 for past pain and suffering); *Russano v. Sec'y of Health & Hum. Servs.,* No. 18-0392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020) (awarding $80,000 for past pain and suffering); *Accetta v. Sec'y of Health & Hum. Servs.,* No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021) (awarding $95,000 for past pain and suffering).

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $60,000.00. Opp. at 17. He emphasizes Petitioner's 84-day delay before seeking treatment, and maintains that "she only demonstrated objective symptomology until March 18, 2021, documenting approximately one year and two months of treatment."[8] *Id.* at 12. Distinguishing the cases cited by Petitioner, he instead cites *Knauss* and *Allner*[9] (both of which involved lesser awards of $60,000.00) as appropriate comparable cases. Opp. at 14-16.

### B. Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Henderson v. Sec'y of Health & Hum. Servs.*, No. 20-1261V, 2023 WL 2728778 (Fed. Cl. Spec. Mstr. Feb. 28, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[10]

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of

---

[8] This treatment duration appears to be based upon the period from January 6, 2020, through March 18, 2021.

[9] *Knauss v. Sec'y of Health & Hum. Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018); *Allner v. Sec'y of Health & Hum. Servs.,* No. 19-1048V, 2022 WL 6962656 (Fed. Cl. Spec. Mstr. Sept. 2, 2022).

[10] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

In this case, the medical records show that except for a four-month period from late February to mid-June 2020, Petitioner suffered a mild to moderate SIRVA injury for at least 17 months. She obtained better relief from a second steroid injection administered in June 2020. Her last documented treatment occurred on March 18, 2021.

As evidenced by her almost three-month delay in treatment and initial refusal thereafter to attend PT as recommended, Petitioner's initial symptoms were mild,[11] but worsened in late January 2020. *E.g.,* Exhibit 1 at 21 (January 22nd PCP call). A steroid injection administered at her first orthopedic appointment on January 6th provided only temporary relief, and an MRI performed in February showed a significant tear in the supraspinatus and infraspinatus tendon. Exhibit 3 at 9. Despite her continued skepticism regarding PT, Petitioner attended her first PT session on March 12, 2020, reporting pain ranging from five to nine, currently at a level of seven. Exhibit 4 at 18. She ceased PT in early April 2020, due to the Worldwide COVID Pandemic and a lack of improvement.[12] At a virtual appointment on April 20th, the orthopedist prescribed oral steroids and discussed the possibility of surgery. Exhibit 5 at 11.

Petitioner appears to have obtained better relief from a second steroid injection administered on June 15, 2020. Exhibit 5 at 6. She did not return for further treatment until six months later in mid-December. Exhibit 6 at 8. At a PT session on January 25, 2021, Petitioner reported mild to moderate pain, rated at a current level of three and a maximum level of six. Exhibit 8 at 35. Throughout twelve PT sessions ending in early March 2021, Petitioner continued to report improvement. *See,* e.g., Exhibit 8 at 4-9 (last appointment and discharge sheet from March 4, 2021, noting improvements in pain,

---

[11] Petitioner first sought treatment 84 days post-vaccination. Exhibit 3 at 11. At that visit, she showed only a slight reduction in ROM, and declined the PT recommended by the orthopedist. Petitioner again declined the orthopedist's recommendation of PT at her next orthopedic appointment on February 27, 2020. *Id.* at 9.

[12] Petitioner reported no pain improvement at her last PT session on April 6, 2020. Exhibit 4 at 41-42. And the PT discharge sheet completed on May 5, 2020, indicates Petitioner "has been recommended to follow up with MD as she is not responding to therapy." *Id.* at 44. Additionally, in the medical record from Petitioner's virtual orthopedic appointment on April 20, 2020, it was noted that she "had to stop [PT] due to covid." Exhibit 5 at 10.

ROM, and strength, as well as an intention not to return for additional PT). It also appears she was working out and teaching spin classes during this time. Exhibit 8 (PT records containing numerous entries referencing these activities).

Furthermore, some of the symptoms Petitioner complained of in March 2021 did not appear to be related to her SIRVA injury. On March 4, 2021, for example, Petitioner reported decreased right shoulder pain, but "increased muscle tension and pain at the back of her neck and down to the upper back of the [right] side." Exhibit 8 at 4. And her MRI revealed some findings, such as a labral tear, not necessarily related to her SIRVA injury. Exhibit 3 at 5. At her last orthopedic appointment on March 18, 2021, Petitioner indicated she was "[d]efinitely improving," but the orthopedist characterized her progress as slow. Exhibit 9 at 6.

The comparable cases cited by Respondent – *Knauss* and *Allner* - share only one similarity to the present case, since they also involved an initial treatment delay of several months. *Knauss,* 2018 WL 3432906, at *2; *Allner*, 2022 WL 6962656, at *5. In other areas, however, they diverge significantly, making any meaningful comparison difficult. For example, the pain levels reported by those petitioners were much lower. *Knauss,* 2018 WL 3432906, at *2-4; *Allner*, 2022 WL 6962656, at *5-6. Moreover, *Knauss* involved a much older individual who suffered prior shoulder pain and degenerative joint disease. *Knauss,* 2018 WL 3432906, at *2-4.

Petitioner's comparables, however, are also largely unhelpful. *See,* e.g., *T.E.,* 2021 WL 2935751, at *4-5 (involving a shorter SIRVA injury and urgent care visit eighteen days post-vaccination). *Bergstrom,* however, did provide useful guidance, even if the sum awarded is a bit high. That case involved a petitioner who also delayed seeking initial treatment, and who obtained improvement after 21 PT sessions and two cortisone injections. *Bergstrom,* 2021 WL 5754968, at *5-6. However, the *Bergstrom* petitioner suffered more severe pain levels and limitations in ROM than Petitioner. Especially relevant in this regard is Petitioner's initial reluctance to undergo PT and strenuous activities she engaged in following her second cortisone injection. *Id.* Thus, Petitioner's award should be lower than the $80,000.00 awarded in *Bergstrom.*

Three cases not cited by the parties - *Sakovits, Belka,* and *Winkle*[13] - were actually also very helpful. These decisions featured awards ranging from $68,000.00 to $68,500.00, and petitioners who waited several months before seeking treatment, and

---

[13] *Sakovits, v. Sec'y of Health & Hum. Servs.,* No. 17-1028V, 2020 WL 3729420 (Fed. Cl. Spec. Mstr. June 4, 2020) (awarding $68,000 for past pain and suffering); *Belka v. Sec'y of Health & Hum. Servs.,* No. 20-0585V, 2022 WL 4717891 (Fed. Cl. Spec. Mstr. Sept. 1, 2022) (awarding $68,000 for past pain and suffering); *Winkle v. Sec'y of Health & Hum. Servs.,* No. 20-0485V, 2022 WL 221643 (Fed. Cl. Spec. Mstr. January 11, 2022) (awarding $68,500 for past pain and suffering).

suffered analogous pain levels and limitations in ROM. *Sakovits*, 2020 WL 3729420, at *3; *Belka*, 2022 WL 4717891, at *5-6; *Winkle,* 2022 WL 221643, at *6-7. However, the *Belka* and *Sakovits* cases involved SIRVA injuries with a shorter duration, and the *Winkle* petitioner's initial delay was much longer (almost six months). *Sakovits*, 2020 WL 3729420, at *3; *Belka*, 2022 WL 4717891, at *6; *Winkle,* 2022 WL 221643, at *6. Thus, Petitioner's award should be slightly greater than the amounts awarded in those cases.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's right shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $70,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[14]

**I therefore award Petitioner a lump sum payment of $70,000.00, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

**IT IS SO ORDERED.**

>  s/Brian H. Corcoran
>  Brian H. Corcoran
>  Chief Special Master

---

[14] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.